# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENTRELL WILLIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 13 C 9299 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Kentrell Willis was convicted of carjacking in violation of 18 U.S.C. § 2119, using and carrying a firearm during the carjacking in violation of 18 U.S.C. § 924(c)(1)(A), and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He was sentenced to a term of 264 months' imprisonment. The conviction and sentence were affirmed on appeal, United States v. Carter, 695 F.3d 690 (7th Cir. 2012), and certiorari was denied, Carter v. United States, 133 S. Ct. 913. Willis has now filed a petition under 18 U.S.C. § 2255, seeking to vacate his conviction and sentence.

Before discussing the petition, we will provide a brief summary of the relevant facts.

At approximately 11:00 p.m. on June 23, 2009, Darrick and Geraldine Anderson were returning home from a birthday party and parked their Ford Explorer in front of their home on South Peoria

Street in Chicago. Kentrell Willis walked up to the driver's side and pointed a fully-loaded .22 caliber Ruger pistol at Darrick Anderson's head and ordered him out of the vehicle. Willis repeatedly stated to Mr. Anderson that he would kill him. Simultaneously, his co-defendant, Jeffery Carter, appeared at the passenger window and stated to Mrs. Anderson, "Do you know what time it is? It's stickup time. Get on the ground, bitch. I gotta gun." Carter led Mrs. Anderson around the rear of the vehicle to the driver's side, where Willis was holding Mr. Anderson at gunpoint. Carter took Mr. Anderson's wallet and watch and Mrs. Anderson's watch and purse. The contents of the purse included Mrs. Anderson's cell phone. Willis and Carter then drove off in the Explorer.

The Andersons then entered their house. Their daughter knew that her mother's cell phone had a "Family Locator" feature, which made it possible to track the location of the cell phone by GPS. The police were called, and the cell phone was tracked for the next hour or so.

At approximately 11:30 p.m., Willis and Carter abandoned the Andersons' Explorer in a parking lot at the corner of 55th Street and South Ashland Avenue. Carter called his uncle, David Chew, and asked him to pick him and Willis up at the parking lot. Shortly thereafter, Mr. Chew did pick up Carter and Willis in a minivan occupied by Carter's other uncle, Milton Latham, and a cousin,

Joseph Billups. While riding in the minivan, Carter used Mrs. Anderson's cell phone to call his parole officer and his mother.

At approximately midnight, while riding in the uncle's minivan, Willis and Carter saw a man walking up to his home on a side street near 63rd Street. They got out of the van and approached the man, Jose Garcia, who started to run. They chased him down, and Carter held a handgun to Garcia's chest while he and Willis took Garcia's wallet and phone. Willis and Carter returned to the van; Garcia entered his home and reported the robbery to the police.

At about 12:12 a.m. on June 24, David Chew's van pulled into a gas station near 85th Street and Cicero Avenue, and all of the occupants got out. Carter attempted to give the handgun to Milton Latham, but Latham refused to take it and placed it back inside Chew's van. Police officers patrolling the area noticed Willis and thought that he fit the description of one of the carjackers. The officers detained all five individuals for questioning and noticed the firearm inside the van, visible through the window. It was a loaded Ruger .22 caliber six-shot pistol.

Carter and Willis were arrested. The police officers had observed Carter drop something into a trash can near the rear of Chew's van upon their arrival. It was recovered and found to be the wallet that Carter and Willis had stolen from Jose Garcia.

Carter gave a full confession, describing the Anderson carjacking and the Garcia robbery and implicating Willis as well as himself.[1]

**WILLIS'S GROUNDS FOR RELIEF**

Willis claims that his attorney failed to provide him with effective assistance and that this ineffective assistance resulted in his conviction and unlawful sentence, in violation of the Sixth Amendment. In order to make out a claim of ineffective assistance, the petitioner must show both that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

Willis has asserted four grounds.

**Ground One**

Ground One is that counsel was ineffective when he failed to move to suppress the firearm in light of the fact that the government stated in a pretrial memorandum that Willis "will, of course, be prejudiced if the jury believes that the pistol found in the van along with them was the same pistol used in the carjacking." The government apparently misunderstood Willis's

---

[1] For this reason, we tried the case with separate juries, and Willis's jury did not hear Carter's confession.
Carter has filed his own § 2255 petition, which is separately docketed. We will be ruling on that petition at the same time as this ruling on Willis's petition.

argument, as he explains in his reply brief, thinking that he was alleging that counsel should have moved to suppress the firearm on the basis that the search of the van at the gas station was without probable cause. The government's response was that Willis lacked <u>standing</u> to move to suppress because he had no interest in the van and asserts no interest in the firearm. Willis responds in his reply brief that he knows that he had no basis for moving to suppress the search of the van but that his motion to suppress was not based on any such standing; rather, it was based upon the fact that he would be "prejudiced" if the jury found a firearm located in the van to be the same one used in the robbery. This time it is Willis who misunderstands. The government's argument in its pretrial memorandum quoted language from a pretrial order of this court where we said that there would be prejudice, but "there will be nothing unfair about it." In his argument in support of Ground One, Willis omitted the language "but there will be nothing unfair about it" that was contained in this court's order and the government's quotation of the order in its pretrial memorandum. This deliberate omission is a good indication that Willis understood the difference between prejudice and unfair prejudice. In any event, counsel had no basis for moving to suppress the firearm, and Ground One is rejected.

## **Ground Two**

Willis argues that counsel was ineffective in failing to move to dismiss Count One of the indictment (the carjacking count) on the basis that it omitted an essential element required by the statutory language. His point is that Count One failed to charge that the defendants acted with intent to cause death or serious bodily harm. It alleges only that the defendants intended to cause serious bodily harm. The government responds that the Court of Appeals held that the intention of Congress was that <u>either</u> intent would be sufficient and that the petitioner cannot re-litigate on a § 2255 petition something that was decided on direct appeal, citing <u>Olmstead v. United States</u>, 55 F.3d 316, 319 (7th Cir. 1995). In his reply, Willis argues that the Court of Appeals did not rule on the sufficiency of Count One to charge an offense, but only held that this court's jury instruction that omitted any requirement that the jury find the defendants had intended to cause <u>both</u> death and serious bodily harm was appropriate. The fact remains that the Court clearly held that the statute is in the alternative and the required intent is to cause <u>either</u> death or serious bodily harm. "The plain language of the statute indicates that a defendant can satisfy the requisite mental state by acting with the intent to cause <u>either</u> death <u>or</u> serious bodily harm." <u>Carter</u>, 695 F.3d at 695.

Ground Two of the petition is rejected.

**Ground Three**

Ground Three is that counsel was ineffective for failure to move the court to dismiss for "lack of subject matter and territorial jurisdiction." The government, focusing on the word "territorial," assumed that the petitioner may be raising the sovereign immunity and lack of "territorial jurisdiction" arguments that have been soundly rejected by the courts. In his reply, the petitioner disavows any such claim and explains that he was simply saying the court lacked jurisdiction because the indictment failed to charge an offense and therefore the court had no jurisdiction to try it. In essence, this is merely a variation of Ground Two, and it is rejected.

**Ground Four**

Ground Four is based on an alleged error this court made at sentencing on November 2, 2011. We made a determination that the defendants had "brandished" a firearm in connection with the carjacking charged in Count One, rather than simply "using" a firearm. The difference is between a seven-year minimum sentence for brandishing and a five-year minimum sentence for using. On June 17, 2013, the Supreme Court held in Alleyne v. United States, 133 S. Ct. 2151, that any fact that increases the mandatory minimum sentence for a crime must be submitted to the jury and found beyond a reasonable doubt rather than being found by the sentencing judge. The petitioner argues that his counsel was ineffective in failing

to object to this court's deciding the brandishing question — in other words, for failing to anticipate Alleyne. We reject that aspect of Ground Four. Stickland does not require that kind of prescience. There is also a question as to whether the resulting sentence on Count One would have been any different. Willis was sentenced to a total of 180 months on Count One, far in excess of the five-year minimum sentence applicable if he merely "used" a firearm.

A more basic question raised by the government is whether Alleyne is retroactive. Our Court of Appeals has predicted that the Supreme Court will not declare Alleyne to be retroactive and has itself declined to apply Alleyne retroactively until the Supreme Court does. Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013). Following the lead of the Seventh Circuit, we deny relief on Ground Four of the petition.

## CONCLUSION

The petitioner has failed to show that his attorney was constitutionally ineffective in his representation of him. Accordingly, the motion to vacate the conviction and sentence pursuant to 28 U.S.C. § 2255 is denied.

Because the petitioner has not made a substantial showing of the denial of a constitutional right, we deny a certificate of appealability pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts.

DATE:      July 23, 2014

ENTER:     _____
           John F. Grady, United States District Judge